**HUNTER DOUGLAS, INC. and Hunter Douglas Fabrication Company,**
Plaintiffs–Appellants

v.

**HARMONIC DESIGN, INC.,** Defendant Cross–Appellant,

and

**Springs Industries, Inc. and Springs Window Fashions Division, Inc.**
Defendants Cross–Appellants

Nos. 97–1399, 97–1499, 97–1533.

United States Court of Appeals, Federal Circuit.

Aug. 18, 1998.

---

James W. Dabney, Pennie & Edmonds LLP, New York City, argued, for plaintiffs-appellants. With him on the brief were James G. Markey and Brian M. Rothery. Of counsel was Caroline R. Clark. Also of counsel on the brief was Richard J. Codding, Loeb & Loeb, Los Angeles, California.

Joseph R. Re, Knobbe, Martens, Olson & Bear, Newport Beach, California, argued for defendant cross-appellant, Harmonic Design, Inc. With him on the brief was Michael K. Friedland.

Roy H. Wepner, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, New Jersey, argued for defendants cross-appellants, Spring Industries, Inc., et al. With him on the brief were William L. Mentlik, Marcus J. Millet and Jonathan A. David.

Before CLEVENGER, BRYSON, and GAJARSA, Circuit Judges.

CLEVENGER, Circuit Judge.

In this appeal, we consider to what extent federal patent law preempts state law causes of action prohibiting tortious activities in the marketplace, when to prevail on them, the plaintiff must prove that a United States patent is either invalid or unenforceable. In addition, we consider whether, under 28 U.S.C. § 1338, such state law causes of action arise under federal patent law for purposes of exclusive federal jurisdiction over them. We understand section 1338(a), as construed by both the U.S. Supreme Court and this court, to mandate that federal courts have exclusive jurisdiction over state law causes of action in which a substantial question of federal patent law is pleaded as a necessary element of that claim. Next, we rule that the application of a state law tort is preempted if, in holding a defendant liable for the conduct alleged and proved by the plaintiff, there would be conflict with federal patent law. Otherwise, if the state law tort, as-applied, does not conflict with federal patent law, then the tort is not preempted. The combined result of these rulings is to divest state courts of jurisdiction over state law torts that are subject to section 1338(a) jurisdiction, and to allow only those that survive the preemption analysis to proceed.

Hunter Douglas, Inc., and Hunter Douglas Fabrication Co. (collectively "Hunter Douglas") filed suit against Harmonic Design; Inc. ("Harmonic"), Springs Industries, Inc. ("Springs"), and Springs Window Fashions Division, Inc. ("SWFD") (collectively "the Defendants"). In its complaint, Hunter Douglas pleaded federal and state causes of action. The District Court for the Central District of California dismissed the claim for relief that was based on federal law and exercised jurisdiction over the state law claims, but held that federal patent law preempted them. We affirm the dismissal of Hunter Douglas's alleged federal cause of action, affirm the jurisdictional results, and vacate and remand the district court's preemption rulings.

I

The parties are involved in the manufacture and sale of motorized window blinds. Harmonic owns several patents that claim window-blind technology, including U.S. Patent Nos. 5,391,967, 5,444,339, 5,495,153, and 5,517,094 (the "Harmonic patents"). In its complaint, Hunter Douglas alleges that certain claims of the Harmonic patents are invalid because they are either (1) anticipated under 35 U.S.C. § 102 (1994), (2) obvious under 35 U.S.C. § 103(a) (Supp. I 1995), or (3) neither enabled nor particularly pointed out and distinctly claimed under 35 U.S.C. § 112 (1994). In addition, Hunter Douglas alleges that the Harmonic patents are unenforceable because of inequitable conduct. According to Hunter Douglas, Springs and SWFD have an exclusive license from Har-

monic to commercialize window shades that use the claimed invention of U.S. Patent No. 5,495,153.

Hunter Douglas alleges that it has incurred, and continues to incur, damages because of the allegedly invalid and unenforceable claims of the Harmonic patents. According to Hunter Douglas, the Defendants informed one or more purchasers of motorized window shades that Springs and SWFD have an exclusive license to sell motorized window shades that are covered by the Harmonic patents. In 1996, before introducing a new motorized window shade to the market, Hunter Douglas investigated the Harmonic patents to determine whether they were valid and enforceable and whether its new product infringed them. After several months of delay, which Hunter Douglas attributes to its examination of the Harmonic patents, Hunter Douglas released its new product. In its complaint, Hunter Douglas emphasizes that Harmonic "acted with willful and wanton disregard" in procuring the invalid and unenforceable patent claims, and that "Harmonic made [misrepresentations] with intent to deceive and mislead the [Patent and Trademark Office (PTO)] and to gain an unfair and unwarranted competitive advantage." Hunter Douglas asserts that Springs and SWFD, "by claiming to hold exclusive rights" under the Harmonic patents, "acted with willful and wanton disregard" because they "knew or should have known" that claims of the Harmonic patents were invalid and unenforceable. Finally, Hunter Douglas contends that the Defendants "acted ... with intent to hinder, delay, or exclude competition ... by unfair and unlawful means," and that, "[b]y falsely and recklessly asserting title to public property," they "have slandered and injured" Hunter Douglas's rights.

The complaint asserts federal jurisdiction under sections 1331, 1338(a), 1367, and 2201 of Title 28 of the U.S.Code. It sets forth seven claims for relief. In the first, Hunter Douglas seeks a declaratory judgment of noninfringement, invalidity, or unenforceabil-ity of claims of the Harmonic patents. In this same first count, Hunter Douglas alternatively alleges that, under Article I, section 8, clause 8 of the U.S. Constitution—the Patent Clause—and 35 U.S.C. §§ 102, 103, it has a federal right to use and copy material that is in the public domain. Hunter Douglas asserts that the Defendants, by obtaining invalid and unenforceable patent claims, violated that right. Counts two through seven plead causes of action that are creatures of California law. They are (2) unfair competition, (3) violation of the Unfair Competition Act, California Business & Professional Code § 17200 *et seq.*, (4) injurious falsehood, (5) negligence, (6) intentional interference with prospective economic advantage, and (7) negligent interference with prospective economic advantage.

For relief, Hunter Douglas seeks a declaration that it has a federal right to use the subject matter of certain claims of the Harmonic patents, that those claims are invalid under sections 102, 103, or 112 of Title 35, and that the Harmonic patents are unenforceable because of inequitable conduct. Hunter Douglas further seeks damages and injunctive relief based on the state law causes of action.

II

The district court ruled on two motions to dismiss and two motions by the Defendants for attorney fees under 35 U.S.C. § 285 (1994).

A.

Springs and SWFD moved to dismiss all the counts both for lack of subject matter jurisdiction and for failure to state a claim under Fed.R.Civ.P. 12(b)(1) & (6). The district court granted-in-part and denied-in-part the motion. *See Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 962 F.Supp. 1249, (C.D. Cal. 1997) (order and opinion). The Defendants also sought attorney fees under 35 U.S.C. § 285, which the district court denied.

To elaborate, Hunter Douglas in the first count pleaded both a declaratory judgment action of noninfringement, invalidity, and unenforceability, and a federal right to copy and to use. The district court dismissed both versions with prejudice. With respect to the declaratory judgment action, the court ruled that there was no "actual controversy" to allow for jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1994). According to the district court, Hunter Douglas did not have a reasonable apprehension of being sued for patent infringement. With respect to the federal right to copy and to use, the court held that there was no cause of action to enforce such a right. According to the district court, Hunter Douglas asked the court to imply a new cause of action. Stating that there was no reason to believe that Congress had intended to create such a cause of action, the court refused. Consequently, the court dismissed the first count.

With respect to counts two through seven, which plead state law causes of action, the district court denied the motion to dismiss for lack of subject matter jurisdiction. Under 28 U.S.C. § 1338(a) (1994), the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents." The Supreme Court has held that, under section 1338(a), there are two classes of actions arising under federal patent law: those in which the federal law creates the cause of action, and those in which "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Because federal law did not create the state law causes of action, they were not members of the first class, the district court ruled, but they were members of the second class because they required the plaintiff to prove that the patent claims at issue are, in some way, defective. The court concluded that the issues of whether a patent is valid or enforceable are substantial questions of federal patent law. As a result, the court exercised jurisdiction over counts two through seven.

**B**

On the second motion to dismiss, the district court, stating that federal patent law preempts the state law causes of action, dismissed them with prejudice. *See Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 962 F.Supp. 1249, 1253, 42 U.S.P.Q.2d 1629, 1633 (C.D.Cal.1997). As the district court recited, there are three ways in which federal law preempts state law: explicit, field, and conflict preemption. The district court ruled that Congress had not explicitly preempted the state law causes, *see id.* at 1251, 962 F.Supp. 1249, 42 USPQ2d at 1631, but held that there was both field and conflict preemption, *see id.* at 1251–53, 42 U.S.P.Q.2d at 1631–33. For field preemption, the court concluded that, because Hunter Douglas could not bring a federal cause of action to invalidate the patent claims at issue, it should not be able to invalidate them through a state law claim. For conflict preemption, because the state law causes of action required Hunter Douglas to prove that certain patent claims were invalid, the district court held that these actions were in conflict with federal patent law. On these two alternative grounds, the district court dismissed counts two through seven.

The court, holding that the case was not "exceptional," also denied the Defendants' second motion for attorney fees. *See Hunter Douglas, Inc. v. Harmonic Design*, 962 F.Supp. 1249 (C.D. Cal.1997) (order and opinion).

**C**

Hunter Douglas appeals the district court's dismissal of the claims. The Defendants cross-appeal the district court's denial of their motions for attorney fees.

**III**

We begin by considering whether there was federal jurisdiction. The district court dismissed count one in response to the Defendants' motion based on Rule 12(b)(1) &

(6), but it did not specify on which ground it relied. The district court asserted jurisdiction over counts two through seven. We must assure ourselves that the district court's decisions concerning jurisdiction are correct and, as well, must satisfy ourselves that we possess jurisdiction over this appeal.

### A

■ For there to be original jurisdiction in the federal courts, there must be both judicial power under Article III of the U.S. Constitution, *see, e.g., Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), and Congress must have invested the district courts with jurisdiction, *see, e.g., Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 807–08, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). To satisfy the first prerequisite, Article III requires a case or controversy. *See, e.g., Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

For the second, although Article III empowers federal courts to hear cases "arising under" federal law, a federal district court may only exercise jurisdiction pursuant to a congressional enactment. *See, e.g., Merrell Dow,* 478 U.S. at 807–08, 106 S.Ct. 3229; *Sheldon v. Sill,* 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers."). Of import here, 28 U.S.C. § 1338(a) provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents.... Such jurisdiction shall be exclusive of the courts of the states in patent ... cases." Because 28 U.S.C. § 1295(a)(1) (1994) provides that this court's appellate jurisdiction derives from section 1338(a) jurisdiction, were the district court to have original jurisdiction over the action under section 1338(a), then we would have appellate jurisdiction under section 1295(a)(1). *See, e.g., Christianson,* 486 U.S. at 807, 108 S.Ct. 2166.

In applying section 1338(a), the Supreme Court has relied on its "arising under" jurisprudence developed primarily in considering 28 U.S.C. § 1331, which is the general federal-question jurisdiction provision. Section 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions *arising under* the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1994) (emphasis added). Out of respect for "[l]inguistic consistency," in that both sections 1331 and 1338(a) use the phrase "arising under" to delineate the reach of their respective grants of federal jurisdiction, the Supreme Court in *Christianson* grafted section 1331 precedent onto section 1338(a). *Christianson,* 486 U.S. at 808–09 & n. 2, 108 S.Ct. 2166.

In considering "arising under" jurisdiction, the Supreme Court explained in *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), that the statutory phrase has:

> [R]esisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts.... [T]he phrase "arising under" masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.

*Id.* at 8, 103 S.Ct. 2841. Accordingly, "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow,* 478 U.S. at 810, 106 S.Ct. 3229.

In *Christianson,* the Supreme Court succinctly summarized the jurisdictional boundaries set by section 1338(a):

> § 1338(a) jurisdiction ... extend[s] only to those cases in which a well-pleaded complaint establishes either [1] that federal patent law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.

486 U.S. at 808–09, 108 S.Ct. 2166.

■ *Franchise Tax,* which considered jurisdiction under section 1331, illuminates the

two possible types of federal jurisdiction under section 1338(a) enunciated in *Christianson*. *See Franchise Tax*, 463 U.S. at 8–9, 103 S.Ct. 2841; *see also T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 825–29, 144 U.S.P.Q. 46, 47–51 (2d Cir.1964) (Friendly, J.) (discussing subject matter jurisdiction). There is federal jurisdiction under the first type if, in the words of Justice Holmes, federal law "creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916), *quoted in Franchise Tax*, 463 U.S. at 9, 103 S.Ct. 2841. This definition is not limiting, however, for "it is well settled that Justice Holmes' test is more useful for describing the vast majority of cases that come within the district courts' original jurisdiction than it is for describing which cases are beyond district court jurisdiction." *Franchise Tax*, 463 U.S. at 9, 103 S.Ct. 2841. Under the second source of jurisdiction, a case arises under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Id.* (citing *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921)); *see Merrell Dow*, 478 U.S. at 808–09, 106 S.Ct. 3229.

■ At least two doctrines restrict the reach of "arising under" jurisdiction under sections 1331 and 1338(a). Under the first, the "well-pleaded complaint" rule, "whether a claim 'arises under' patent law 'must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.'" *Christianson*, 486 U.S. at 809, 108 S.Ct. 2166 (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)). Under the second, "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Id.* at 810, 108 S.Ct. 2166.

Finally, were we to hold that any one of the seven pleaded counts arise under federal patent law in accordance with section 1338(a), then the district court's exercise of jurisdiction over Hunter Douglas's remaining claims might have been proper under 28 U.S.C. § 1367 (1994), which provides for "[s]upplemental jurisdiction" at the discretion of the district court "over all other claims that are so related to claims in the action within [the district's court] original jurisdiction that they form part of the same case or controversy under Article III."

■ Our review of jurisdictional determinations is plenary. *See, e.g., GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 481, 39 U.S.P.Q.2d 1463, 1465 (Fed.Cir.1996) (reviewing for section 1338(a) jurisdiction); *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978, 28 U.S.P.Q.2d 1124, 1127 (Fed.Cir. 1993) (reviewing for case or controversy).

### B

Hunter Douglas pleads in its first count both a declaratory judgment action of noninfringement, invalidity, and unenforceability, and an implied federal cause of action to enforce a federal right to copy and to use. We determine that there is no jurisdiction over this count, no matter how pleaded. First, we hold that Hunter Douglas failed to satisfy the "actual controversy" requirement of the Declaratory Judgment Act. Accordingly, we affirm the dismissal of Hunter Douglas's first claim, when treated as a declaratory judgment action, because the district court lacked judicial power to hear it.

Second, we dismiss Hunter Douglas's alternative rendition of claim one because we reaffirm, consistent with our precedent, that there is neither a federal right to copy and to use, be it constitutional or statutory in source, nor an implied remedy for that purported right. Although we affirm the district court's dismissal of Hunter Douglas's implied cause of action, we conclude, for the reasons set forth below, that it must be dismissed for want of jurisdiction under Fed.R.Civ.P. 12(b)(1), not for failing to state a claim upon which relief can be granted under Fed.

R.Civ.P. 12(b)(6), because the implied cause of action is, in a legal sense, wholly insubstantial. As a result, pleading count one does not bestow federal jurisdiction over the state law actions under section 1367.

1

For a district court to have jurisdiction over a declaratory judgment action, there must be an "actual controversy." 28 U.S.C. § 2201(a). This requirement is identical to the constitutional requirement of Article III that there be a case or controversy. *See, e.g., Aetna,* 300 U.S. at 239–40, 57 S.Ct. 461. When a declaratory judgment plaintiff alleges that the claims of a patent are not infringed, invalid, or unenforceable, we apply a two-step test to determine whether there is an actual controversy. This two-step inquiry provides that there must be "(1) an explicit threat or other action by the patentee, which creates a *reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit,* and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Cygnus Therapeutics Sys. v. ALZA Corp.,* 92 F.3d 1153, 1159, 39 U.S.P.Q.2d 1666, 1670 (Fed.Cir.1996) (quoting *BP Chems.,* 4 F.3d at 978, 28 U.S.P.Q.2d at 1126) (internal quotation marks omitted and emphasis added). In this inquiry, the "first prong looks to [the patentholder's] conduct; [the] second to that of [the declaratory judgment] plaintiff." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736, 6 U.S.P.Q.2d 1685, 1689 (Fed.Cir.1988).

Under this test, the district court's dismissal of the declaratory judgment action was proper. In concluding that there was no actual controversy, the district court held that the first prong was not satisfied because Hunter Douglas had not alleged any facts indicating that it had a reasonable apprehension, stemming from the Defendants' conduct, of an infringement suit based on the Harmonic patents. The most that Hunter Douglas has alleged is that the Defendants own the Harmonic patents and that they have publicized them. Hunter Douglas did not allege that the Defendants have signaled an intention, in any way, to file suit claiming infringement of the Harmonic patents by Hunter Douglas's future product. Accordingly, because Hunter Douglas has failed to allege any activity by which the Defendants have created a reasonable apprehension of suit, we affirm the district court's dismissal of the first claim, when writ as a declaratory judgment action, for lack of jurisdiction.

In asserting that claim one presents a justiciable controversy, Hunter Douglas argues that, because it has alleged the necessary requirements for a case or controversy under Article III, dismissal was improper. Essentially, Hunter Douglas contends that this court's two-part test, which was not satisfied, diverges from the constitutional requirements for a case or controversy, which is all that the Declaratory Judgment Act requires for a justiciable claim.

Even were we to have the authority, we would refuse, as Hunter Douglas demands, to rewrite this court's law for declaratory judgment actions in this context. Although we appreciate that our test for an actual controversy "must be read, applied, and perhaps modified in light of the facts of subsequent cases," *Arrowhead,* 846 F.2d at 736, 6 U.S.P.Q.2d at 1689, under the facts as alleged by Hunter Douglas, for the district court to adjudicate this declaratory judgment action "would involve the court in rendering a forbidden advisory opinion." *Id.* at 735, 846 F.2d 731, 6 U.S.P.Q.2d at 1688. We have consistently required that, for a district court to exercise jurisdiction over a declaratory judgment action in which the plaintiff complains of noninfringement, invalidity, or unenforceability, the plaintiff must allege "acts of defendant indicating an intent to enforce its patent." *Id.* at 737, 846 F.2d 731, 6 U.S.P.Q.2d at 1689. In other words, "for an actual controversy more is required than the existence of an adversely held patent." *BP Chems.,* 4 F.3d at 978, 28 U.S.P.Q.2d at 1126. We have maintained this requirement, for it "protects quiescent patent owners against unwarranted litigation" under Title 35. *Ar-*

*rowhead,* 846 F.2d at 736, 6 U.S.P.Q.2d at 1689. The "reasonable apprehension" prong of the two-part test thus contributes to policing the boundary between a constitutional controversy, which is judicially cognizable under the Declaratory Judgment Act, and "a difference or dispute of a hypothetical or abstract character," *Aetna,* 300 U.S. at 240, 57 S.Ct. 461, which is not. Accordingly, because the allegations do not support a reasonable apprehension on Hunter Douglas's part, there is no actual controversy.

2

With respect to the impression of count one as pleading an implied cause of action, the argument for original and appellate jurisdiction has three essential parts: first, that under either the Patent Clause or Title 35, there is a federal right to copy and to use that which is in the public domain; second, that there is an implied cause of action to enforce that right; and third, that the implied cause of action arises under "any Act of Congress relating to patents" so as to provide for original jurisdiction under section 1338(a) and appellate jurisdiction in this court under section 1295(a)(1), *see, e.g., Harms,* 339 F.2d at 828 (noting but not deciding this issue for federal copyright law). Because we hold, consistent with our precedent, that there is neither a federal right to copy and to use nor an associated cause of action, we do not consider the third part of the argument.

■ *Leatherman Tool Group Inc. v. Cooper Industries, Inc.,* 131 F.3d 1011, 44 U.S.P.Q.2d 1837 (Fed.Cir.1997), disabuses Hunter Douglas of its ill-conceived legal position. In that case, Cooper Industries, Inc. ("Cooper") argued that there was both a federal right to copy and a supporting cause of action on the basis of the Supreme Court's opinion in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989). *See Leatherman,* 131 F.3d at 1014, 44 U.S.P.Q.2d at 1840. We explained that, contrary to Cooper's assertion, "the federal patent laws do not create any affirmative right to make, use, or sell anything." *Id.* at 1015. In *Bonito Boats,* "[t]he Supreme Court merely stated that while the patent laws provide the right to exclude others from making, using, or selling a claimed invention for a statutorily limited amount of time, if such rights could be but were not awarded under the patent laws, the states may not provide commensurate protection." *Leatherman,* 131 F.3d at 1014, 44 U.S.P.Q.2d at 1841. Hence, "the patent laws create no affirmative right supporting a cause of action against a competitor to assert a right to make or copy what is in the public domain and excluded from patent protection." *Id.* at 1015, 131 F.3d 1011, 44 USPQ2d at 1841.

Not only are we bound by the *Leatherman* holding, *see, e.g., Jacobs Wind Elec. Co. v. Florida Dep't of Transp.,* 919 F.2d 726, 728, 16 U.S.P.Q.2d 1972, 1973 (Fed.Cir.1990), but Hunter Douglas has also not presented any argument persuading us, in the least, that such a right exists under either the Patent Clause or Title 35. In addition, even if there were such a right, Hunter Douglas has not convinced us that there would be a remedy. In arguing for a remedy to protect a constitutionally based right, Hunter Douglas cites *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which implied a federal remedy of damages for violations of the Fourth Amendment by federal officers. *See id.* at 389, 91 S.Ct. 1999. However, Hunter Douglas does not address the subsequent Supreme Court law refusing to imply a remedy when Congress has already provided an "elaborate remedial system." *Bush v. Lucas,* 462 U.S. 367, 388, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *see Schweiker v. Chilicky,* 487 U.S. 412, 414, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). Congress has enacted such a system under federal patent law and thereby arguably precluded a constitutional remedy for the purported right. Were that right to have a statutory origin in Title 35, as opposed to a constitutional one, then for there to be an implied cause of action, under *Cort v. Ash,* 422 U.S.

66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), a four-part test would need to be satisfied. *See id.* at 78, 95 S.Ct. 2080. Hunter Douglas has not even presented that law. Consequently, even if there were a right, which there is not, we would not necessarily imply a remedy.

■ Although we reject Hunter Douglas's arguments, we still must determine whether count one should be dismissed under Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim, a distinction overlooked by the district court. The distinction is nontrivial, for if dismissal is for the latter reason, then there would be original jurisdiction over count one, *see, e.g., Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946), which might support jurisdiction over counts two through seven under section 1367. In contrast, if dismissal is for the former reason, then claim one could not serve as the jurisdictional magnet for the accompanying claims. *See, e.g.,* 13B Charles Alan Wright et al., *Federal Practice and Procedure* § 3564, at 74–75 (2d ed. 1984) ("The practical importance of the distinction between the two kinds of dismissals is that if the federal claim is substantial enough to invoke federal jurisdiction, the court has power to exercise pendent [now supplemental] jurisdiction over other claims that also may be asserted in the complaint, for which there is no independent jurisdictional basis." (footnote omitted)); *see also Lewis v. United States,* 70 F.3d 597, 602–04 (Fed.Cir.1995) (discussing distinction).

We hold that count one, when understood to allege a remedy for a federal right to copy and to use, must be dismissed for lack of jurisdiction because it is entirely insubstantial. "[W]holly insubstantial and frivolous" claims do not merit federal jurisdiction. *Bell,* 327 U.S. at 682–83, 66 S.Ct. 773; *see Crowley Cutlery Co. v. United States,* 849 F.2d 273, 276–77 (7th Cir.1988) (discussing the jurisprudence). A "question may be plainly unsubstantial ... because it is 'obviously without merit.'" *Hagans v. Lavine,* 415 U.S. 528, 537, 94 S.Ct. 1372, 39 L.Ed.2d

577 (1974) (quoting *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062 (1933)). As our preceding critique makes manifest, Hunter Douglas's allegation of a right and remedy is, without doubt, meritless. *Leatherman* reached the same conclusion, for it transferred the remaining claims in that case to another regional circuit court because appellate jurisdiction in this circuit, which derives from section 1338(a) jurisdiction, did not lie. *See* 131 F.3d at 1015, 44 U.S.P.Q.2d at 1841. Hence, in accordance with *Leatherman* and our own view of the insubstantiality of count one, we sustain its dismissal for lack of jurisdiction.

C

■ Because there is no jurisdiction in the district court over count one, the remaining six state law counts stand naked, insofar as at least one of them must provide for "arising under" jurisdiction under section 1338(a) for there to be original jurisdiction. None of them are creatures of federal law, so for there to be subject matter jurisdiction over counts two through seven, at least one of them must satisfy the second type of section 1338(a) jurisdiction. If so, then under section 1367, the district court's exercise of jurisdiction over the remaining state law claims would have been proper, in that it would have been an abuse of discretion for the district court not to hear them together. Because we determine that count four, which pleads an injurious falsehood, belongs in federal court under section 1338(a), we affirm the district court's exercise of jurisdiction over all of the state law claims. Hence, there is both original and appellate jurisdiction to decide whether the state law claims are preempted by federal patent law.

Under the second type of section 1338(a) jurisdiction, to determine whether a state law cause of action "necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims," *Christianson* teaches that we are to look to

the elements of the claims appearing on the face of the complaint. 486 U.S. at 808–09, 108 S.Ct. 2166. Our scrutiny of the claims pleaded is thorough, for we must ascertain whether all the theories by which a plaintiff could prevail on a claim rely solely on resolving a substantial question of federal patent law. *See id.* at 809, 108 S.Ct. 2166; *see also Merrell Dow,* 478 U.S. at 805–06, 810–12, 106 S.Ct. 3229 (examining closely a state law cause of action housing a federal law issue); *Franchise Tax,* 463 U.S. at 13, 19–22, 103 S.Ct. 2841 (same).

We analyze claim four of the complaint alleging that the Defendants committed an injurious falsehood. This cause of action requires, among other elements, an allegation of a false statement. *See, e.g., Seeley v. Seymour,* 190 Cal.App.3d 844, 237 Cal.Rptr. 282, 288 (1987); *Polygram Records, Inc. v. Superior Court,* 170 Cal.App.3d 543, 216 Cal. Rptr. 252, 255 (1985). The complaint alleges that the falsity is the Defendants' assertion that they "hold exclusive rights to make or sell window shades covered by one or more of the [Harmonic patents]." The assertion is false, Hunter Douglas contends in the complaint, because certain claims of the Harmonic patents are invalid and all of the claims are unenforceable.

Like the district court, we hold that this count, as pleaded, arises under section 1338(a). First, the action satisfies the well-pleaded complaint rule, for a required element of the state law cause of action—a falsity—necessarily depends on a question of federal patent law, in that either certain claims of the Harmonic patents are invalid or all of the claims are unenforceable. *Cf. Speedco, Inc. v. Estes,* 853 F.2d 909, 912–13, 7 U.S.P.Q.2d 1637, 1640 (Fed.Cir.1988) (denying federal jurisdiction because the complaint failed the well-pleaded complaint rule); *McArdle v. Bornhofft,* 980 F.Supp. 68, 71–73, 44 U.S.P.Q.2d 1470, 1471–72 (D.Me.1997) (same). To make out that falsity, count four relies on only federal patent law. Second, all the theories upon which Hunter Douglas could prevail depend on resolving a question of federal patent law, because Hunter Doug-

las does not plead, in its complaint, any other basis for a falsity on the Defendants' part. *Cf. Christianson,* 486 U.S. at 813, 108 S.Ct. 2166 (concluding that "the appearance on the complaint's face of an alternative, non-patent theory compels the conclusion that the ... claim does not 'arise under' patent law"); *American Tel. & Tel. Co. v. Integrated Network Corp.,* 972 F.2d 1321, 1324, 23 U.S.P.Q.2d 1918, 1919–20 (Fed.Cir.1992) (same); *McArdle,* 980 F.Supp. at 71–73, 44 U.S.P.Q.2d at 1471–72 (same).

We next hold that the questions of federal patent law—validity, and enforceability—are "substantial" enough to convey section 1338(a) jurisdiction. In prescribing a substantiality requirement in *Christianson,* the Court implicitly relied on the reasoning from *Merrell Dow.* There, the Court held that there was no section 1331 jurisdiction over a state law claim alleging that, because the defendant Merrell Dow had misbranded a drug in violation of the Federal Food, Drug, and Cosmetic Act (the "FDCA"), there was a rebuttable presumption of negligence on Merrell Dow's part. *See Merrell Dow,* 478 U.S. at 805–07, 106 S.Ct. 3229. Of critical importance to the holding in *Merrell Dow* was the Court's conclusion that Congress has provided no federal remedy by which a private party could enforce the FDCA provisions presented. *See id.* at 811, 106 S.Ct. 3229. Consequently:

> Given the significance of the assumed congressional determination to preclude federal private remedies, the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system.... We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "*substantial*" to confer federal-question jurisdiction.

*Id.* at 814, 106 S.Ct. 3229 (emphasis added). To explain further its holding, the Court

referred favorably to commentators who "have suggested that [the Court's] § 1331 decisions can best be understood as an evaluation of the *nature* of the federal interest at stake." *Id.* at 814 n. 12, 106 S.Ct. 3229 (citing David L. Shapiro, *Jurisdiction and Discretion,* 60 N.Y. U.L.Rev. 543, 568 (1985); Charles Alan Wright, *Federal Courts* 96 (4th ed.1983); and William Cohen, *The Broken Compass: The Requirement That a Case Arise "Directly" Under Federal Law,* 115 U. Pa. L.Rev. 890, 916 (1967)).

In the substantiality requirement of *Christianson,* the Court subsumed the *Merrell Dow* concern with the nature of the federal interest at stake. In *Merrell Dow,* the absence of a congressionally approved private remedy indicated that Congress thought the federal interest at stake not substantial enough to warrant federal question jurisdiction. In contrast to the FDCA, for which Congress provided no private remedy, Congress clearly intended for private parties to enforce federal patent law, most notably through an infringement suit, *see* 35 U.S.C. § 271 (1994), or the corresponding declaratory judgment action, *see* 28 U.S.C. § 2201(a). Hence, the *Christianson* inquiry, by requiring a "substantial" question of federal patent law, entirely accords with the concern over congressional intent that the Court made paramount in *Merrell Dow.* To decide which issues of federal patent law are substantial enough to warrant section 1338(a) jurisdiction, then, we consider the nature of the federal issues at stake.

Post-*Christianson,* we have held that, for purposes of section 1338(a) jurisdiction, at least four issues of federal patent law are substantial enough to satisfy the jurisdictional test. They are infringement, *see Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 986 F.2d 476, 478, 25 U.S.P.Q.2d 1798, 1799–1800 (Fed.Cir.1993); *see also Scherbatskoy v. Halliburton Co.,* 125 F.3d 288, 291, 44 U.S.P.Q.2d 1466, 1469 (5th Cir. 1997); *Datapoint Corp. v. VTel Corp.,* No. 97 CIV. 642 RPP, 1997 WL 220306, at *1–3, 42 U.S.P.Q.2d 1793, 1795 (S.D.N.Y. Apr. 29, 1997); inventorship issues under 35 U.S.C.

§§ 116, 256, *see MCV, Inc. v. King–Seeley Thermos Co.,* 870 F.2d 1568, 1570–71, 10 U.S.P.Q.2d 1287, 1290 (Fed.Cir.1989); *see also Rustevader Corp. v. Cowatch,* 842 F.Supp. 171, 173–74, 29 U.S.P.Q.2d 1076, 1078–79 (W.D.Pa.1993); attorney fees under 35 U.S.C. § 285, *see Imagineering, Inc. v. Van Klassens, Inc.,* 53 F.3d 1260, 1263, 34 U.S.P.Q.2d 1526, 1528 (Fed.Cir.1995), and the revival of an allegedly unintentionally abandoned patent application under 35 U.S.C. §§ 41, 133, or in the alternative, the right to file a continuation application under 35 U.S.C. § 120, *see Morganroth v. Quigg,* 885 F.2d 843, 846, 12 U.S.P.Q.2d 1125, 1127 (Fed. Cir.1989). *See also Animal Legal Defense Fund v. Quigg,* 900 F.2d 195, 196–97, 14 U.S.P.Q.2d 1485, 1486–87 (9th Cir.1990) (holding that whether animals are patentable is a substantial question of federal patent law under *Christianson* ). *But see Jim Arnold Corp. v. Hydrotech Sys., Inc.,* 109 F.3d 1567, 1571–72, 42 U.S.P.Q.2d 1119, 1122–24 (Fed. Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 338, 139 L.Ed.2d 262 (1997) (denying section 1338(a) jurisdiction for a claim raising ownership and inventorship disputes).

Were we to conclude that validity and enforceability, unlike infringement, were not substantial enough, then there would be no section 1338(a) jurisdiction over count four, because Hunter Douglas could prevail under theories that do not depend on a substantial question of federal patent law. In keeping with our precedent, we treat validity and enforceability the same as infringement. We see no reason why our jurisdictional jurisprudence should distinguish the first two from the latter. Each of these issues is substantial in the federal scheme, for they are essential to the federally created property right: one determines whether there is a property right, another whether that right is enforceable, and the third what is the scope of that right.

In deciding that the issues of validity and enforceability are substantial enough, we also look to the purposes that Congress intended to promote by forming this court. In enacting the Federal Courts Improvement Act of

1982, Pub.L. No. 97–164, 96 Stat. 25, which created this court, Congress made manifest its intent to effect "a clear, stable, uniform basis for evaluating matters of patent validity/invalidity and infringement/noninfringement," so as to "render[ ] more predictable the outcome of contemplated litigation, facilitate[ ] effective business planning, and add[ ] confidence to investment in innovative new products and technology." *Aerojet–General Corp. v. Machine Tool Works, Oerlikon–Buehrle Ltd.*, 895 F.2d 736, 744, 13 U.S.P.Q.2d 1670, 1677 (Fed.Cir.1990) (in banc) (citing H.R.Rep. No. 97–312 at 20, 23 (1981), and S.Rep. No. 97–275, at 3–6 (1981), *reprinted in* 1982 U.S.C.C.A.N. 11, 13–16). To achieve those goals, we conclude, as we have already in *Additive Controls, MCV, Imagineering,* and *Morganroth* for the issues present in those cases, that validity and enforceability represent federal interests of great stake over which, when the other requirements of section 1338(a) are satisfied, we should exert our appellate jurisdiction under section 1295(a)(1) via section 1338(a) jurisdiction. To conclude otherwise would undermine Congress's expectations for this court.

Finally, our decision that there is section 1338(a) jurisdiction over count four follows from our holding in *Additive Controls.* There, the plaintiff filed suit in Texas state court for business disparagement, a state law claim. The complaint alleged that the defendant had warned the plaintiff's customers that the plaintiff's product infringed the defendant's patent. The defendant removed the case to federal court, and the plaintiff challenged for lack of subject matter jurisdiction. We held that the case properly belonged in federal court. *See* 986 F.2d at 477–79, 25 U.S.P.Q.2d at 1799–1801.

In *Additive Controls,* the state law cause of action pleaded in the complaint required the defendant to make a disparaging statement that was false, which was alleged to be the defendant's accusations of infringement. We concluded that the plaintiff's "right to relief necessarily depends upon resolution of a substantial question of patent law, in that proof relating to patent infringement is a necessary element of [the] business disparagement claim." *Id.* at 478, 986 F.2d 476, 25 U.S.P.Q.2d at 1800. Consequently, there was jurisdiction over the claim under section 1338(a), and removal was proper under 28 U.S.C. § 1441(a). *See id.* at 477, 479, 986 F.2d 476, 25 U.S.P.Q.2d at 1799–1800. Here, Hunter Douglas alleges a claim for injurious falsehood that is, in essence, a Californian counterpart to the business disparagement claim of Texas law.

In accordance with section 1338(a) jurisprudence, as informed by Congress's intent for this court, we affirm the original jurisdiction and thereby assert our appellate jurisdiction under section 1295(a)(1) over count four. With one claim properly in federal court, the others follow under section 1367.

## IV

We next consider whether these state law causes of action, which are appropriately before us, are preempted by federal patent law.[1]

## A

Under the Supremacy Clause, "it has been settled that state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981), and citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819)). The

---

1. As an initial matter, we note that state law torts have previously passed before this court on appeal without mention of preemption. *See, e.g., Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1465, 46 U.S.P.Q.2d 1321, 1333 (Fed.Cir. 1998); *Scosche Indus. v. Visor Gear Inc.*, 121 F.3d 675, 679–82, 43 U.S.P.Q.2d 1659, 1663–65 (Fed.Cir.1997); *Additive Controls,* 986 F.2d at 477–79, 25 U.S.P.Q.2d at 1799–1801; *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 165–67, 225 U.S.P.Q. 34, 39–41 (Fed. Cir.1985). Because the issue of preemption was not addressed, this precedent is of little value to us in deciding this appeal.

Supreme Court has set forth two presumptions that guide the preemption analysis. First, it is presumed that Congress does not "cavalierly" preempt state law causes of action, for "the States are independent sovereigns in our federal system." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). "[T]he historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress," particularly when Congress has "legislated ... in a field which the States have traditionally occupied." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Second, preemption analysis is guided by the "oft-repeated" principle that "[t]he purpose of Congress is the ultimate touchstone." *Medtronic,* 518 U.S. at 485, 116 S.Ct. 2240 (citing, among many others, *Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608, and *Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)) (alteration in original).

Supreme Court precedent establishes that state law is preempted in any one of three ways, which are explicit, field, and conflict preemption. *See generally English v. General Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Because federal patent law plainly does not provide for explicit preemption, *see* 35 U.S.C. §§ 1–376, we of course agree with the district court that there is no preemption on this ground.

▪▪▪ Field and conflict preemption rely on an implicit congressional intent to preempt. Under field preemption, state law is preempted when it regulates conduct in a field that Congress intends the federal government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (quoting *Rice,* 331 U.S. at 230, 67 S.Ct. 1146) (internal quotation marks

omitted), or when congressional legislation "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice,* 331 U.S. at 230, 67 S.Ct. 1146.

Alternatively, state law is preempted to the extent that it actually conflicts with federal law. Thus, there is conflict preemption when it is impossible for a private party to comply with both state and federal requirements, *see, e.g., Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

Finally, the Supreme Court has recognized that these three categories of preemption are not "rigidly distinct." *English,* 496 U.S. at 79 n. 5, 110 S.Ct. 2270. For example, field preemption is a species of conflict preemption, for a "state law that falls within a preempted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulation." *Id.* at 80 n. 5, 110 S.Ct. 2270.

B

We recently considered the general preemptive effect of federal patent law in *Dow Chemical Co. v. Exxon Corp.,* 139 F.3d 1470, 46 U.S.P.Q.2d 1120 (Fed.Cir.1998), in which we ruled that federal patent law did not preempt two state unfair competition claims. *See id.* at 1471, 1479, 996 F.Supp. 294, 46 U.S.P.Q.2d at 1121, 1123–34. In that case, the plaintiff pleaded state law claims for intentional interference with both the performance of a contract and prospective contractual relations, each of which relied on proving that the patent was unenforceable because of inequitable conduct. *See id.* at 1472 & n. 1, 1475 n. 3, 139 F.3d 1470, 46 U.S.P.Q.2d at 1120 & n. 1, 1124 n. 3. Importantly, the plaintiff alleged the "bad faith enforcement of a reputedly unenforceable patent," in that

the defendant "allegedly knew that its patent was unenforceable when it engaged in market misconduct." *Id.* at 1476, 139 F.3d 1470, 46 U.S.P.Q.2d at 1126. Five Supreme Court cases provided us with "substantial guidance": *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), *Compco Corp. v. Day–Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974), *Aronson v. Quick Point Pencil Co.,* 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979), and *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989). *Dow Chem.,* 139 F.3d at 1473–75, 46 U.S.P.Q.2d at 1123–24.

■ In *Dow Chemical,* we understood the Supreme Court precedent to preempt state laws that "seek to offer patent-like protection to intellectual property inconsistent with the federal scheme." *Id.* at 1475, 139 F.3d 1470, 46 U.S.P.Q.2d at 1125; *see also, e.g., Cover v. Hydramatic Packing Co.,* 83 F.3d 1390, 1394 & n. 3, 38 U.S.P.Q.2d 1783, 1786 & n. 3 (Fed.Cir.1996) (construing the Supreme Court precedent in the same manner), *cert. denied,* — U.S. —, 117 S.Ct. 183, 136 L.Ed.2d 122 (1996). We concluded, however, that this precedent does not dictate whether a state law unfair competition claim relying on a violation of federal patent law is not preempted by federal patent law. *Dow Chem.,* 139 F.3d at 1473–75, 46 U.S.P.Q.2d at 1123–25; *see also id.* at 1480, 139 F.3d 1470, 46 U.S.P.Q.2d at 1129 (Lourie, J., dissenting) (stating that "none of these Supreme Court cases deals with the issue" of a state law unfair competition claim predicated on inequitable conduct).

Although this quintet of cases does not decide the preemption issue on appeal here, it sets forth the essential criteria—the "objectives of the federal patent laws"—for determining whether there is field or conflict preemption. *Kewanee Oil,* 416 U.S. at 480, 94 S.Ct. 1879 (quoting *Sears, Roebuck,* 376 U.S. at 231, 84 S.Ct. 784) (internal quotation marks omitted). The objectives are:

First, patent law seeks to foster and reward invention; second it promotes disclosure of inventions to stimulate further innovation and to permit the public to practice the invention once the patent expires; third, the stringent requirements for patent protection seek to assure that ideas in the public domain remain there for the free use of the public.

*Aronson,* 440 U.S. at 262, 99 S.Ct. 1096 (citing *Kewanee Oil,* 416 U.S. at 480–81, 94 S.Ct. 1879). These objectives are in some "tension" with one another, and Congress struck a "balance" between them through federal patent law. *Bonito Boats,* 489 U.S. at 152, 109 S.Ct. 971. Referring to these goals, we held in *Dow Chemical* that there was no preemption of the two state law torts as pleaded by the plaintiff. *See Dow Chem.,* 139 F.3d at 1471, 46 U.S.P.Q.2d at 1121.

In reviewing preemption of state unfair competition law, we look to the law of the regional circuit in which the district court resides, *see Cable Elec. Prods., Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1032–33, 226 U.S.P.Q. 881, 892–93 (Fed.Cir.1985), where, consistent with the other circuits, the review of this issue is plenary, *see, e.g., Espinal v. Northwest Airlines,* 90 F.3d 1452, 1455 (9th Cir.1996). Because Ninth Circuit law does not require any analytic process for assessment of preemption based on conflict with federal patent law, we apply our plenary authority to the issue at hand.

### C

■ We readily conclude that, in accordance with *Dow Chemical,* there is no reason to believe that the clear and manifest purpose of Congress was for federal patent law to occupy exclusively the field pertaining to state unfair competition law. Because of the lack of such congressional intent, in conjunction with the underlying presumption disfavoring preemption, there is no field preemption of state unfair competition claims that rely on a substantial question of federal patent law.

*Dow Chemical,* at the very least, compels this result, for if there were field preemption,

then the state law claims in that case would presumably have been preempted. We accept *Dow Chemical*'s logic and incorporate it here. *See* 139 F.3d at 1471–79, 46 USPQ2d at 1123–28. Of significant import to that decision, which we repeat here because of its relevance to the issue of field preemption, is the observation that state unfair competition law regulates conduct in a different field from federal patent law. *See id.* at 1477, 139 F.3d 1470, 46 U.S.P.Q.2d at 1126. The state law remedies in *Dow Chemical* were directed to allegedly tortious conduct in the marketplace: "[S]tate law governs the maintenance of orderly contractual relations and this function is not preempted merely because patents and patent issues are presented in the substance of those contracts." *Id.* at 1478, 139 F.3d 1470, 46 U.S.P.Q.2d at 1128.

Both the Supreme Court and this court have distinguished between the two fields in which federal patent law and state unfair competition law operate. In *Bonito Boats*, the Court opined: "Both the law of unfair competition and state trade secret law have coexisted harmoniously with federal patent protection for almost 200 years, and Congress has given no indication that their operation is inconsistent with the operation of the federal patent laws." 489 U.S. at 166, 109 S.Ct. 971. In *Mars Inc. v. Kabushiki–Kaisha Nippon Conlux*, 24 F.3d 1368, 30 U.S.P.Q.2d 1621 (Fed.Cir.1994), we espoused a similar view:

> Unfair competition law and patent law have long existed as distinct and independent bodies of law, each with different origins and protecting different rights....

The distinction between the law of unfair competition and patent law is also evident in the general statutory framework enacted by Congress. Whereas patent law is completely preempted by federal law, the law of unfair competition, despite some federal encroachment, *see* 15 U.S.C. § 1125(a) (1988), remains largely free from federal exclusivity. The provisions of Title 35 governing patents are not *in pari materia* with the state and federal provisions governing unfair competition.

24 F.3d at 1373, 30 U.S.P.Q.2d at 1624 (citation omitted). Again, we spoke in *Cover*: "With respect to field pre-emption, Title 35 occupies the field of patent law, not commercial law between buyers and sellers." 83 F.3d at 1393, 38 U.S.P.Q.2d at 1786.

Not only does this precedent show the substantial difference between the two fields, but it also demonstrates that the regulation of business affairs is traditionally a matter for state regulation. *See also, e.g., California v. ARC Am. Corp.*, 490 U.S. 93, 101, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989) ("Given the long history of state common-law and statutory remedies against monopolies and unfair business practices, it is plain that this is an area traditionally regulated by the States." (footnote omitted)). Hence, under the Court's preemption jurisprudence, the presumption against preemption has greater force because of the states' long-standing governance of such affairs. *See, e.g., Medtronic*, 518 U.S. at 485, 116 S.Ct. 2240; *Rice*, 331 U.S. at 230, 67 S.Ct. 1146. That reinforced presumption instructs against field preemption.

■ In holding no field preemption, we vacate the district court's ruling. The district court erroneously held to the contrary, because it believed that patent claims may not be held to be invalid or unenforceable in the adjudication of a state law cause of action unless the case also has a cause of action created by federal patent law in which invalidity or unenforceability could have been raised. *See Hunter Douglas*, 962 F.Supp. at 1252, 42 U.S.P.Q.2d at 1631–32. This belief is wrong, for the Supreme Court has repeatedly confirmed that federal patent law issues housed in a state law cause of action are capable of being adjudicated, even if there is no accompanying federal claim. *See, e.g., Hathorn v. Lovorn*, 457 U.S. 255, 266 n. 18, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982); *Pratt v. Paris Gaslight & Coke Co.*, 168 U.S. 255, 257–59, 18 S.Ct. 62, 42 L.Ed. 458 (1897); *see also Speedco*, 853 F.2d at 912–14, 7 U.S.P.Q.2d at 1641–42.

Finally, rejecting field preemption is the better choice in this context, for conflict pre-

emption is a more precise means of determining which state law causes of action are preempted than the blunt tool of field preemption. Defining the field of unfair competition is not an easy task. "The common law concept of 'unfair competition' has not been confined to any rigid definition and encompasses a variety of types of commercial or business conduct considered 'contrary to good conscience.'" *Mars*, 24 F.3d at 1372–73, 30 U.S.P.Q.2d at 1623 (quoting *International News Serv. v. Associated Press*, 248 U.S. 215, 240, 39 S.Ct. 68, 63 L.Ed. 211 (1918)). Debating the boundaries of the unfair competition field, which would surely come about were field preemption to bite, ignores the reasons for preemption. Instead, with no field preemption, we consider whether a state law cause of action conflicts with the purposes of federal patent law, which is the preferred focus for our preemption analysis. *Cf. English*, 496 U.S. at 79 n. 5, 110 S.Ct. 2270 (designating field preemption as a "species" of conflict preemption).

D

For conflict preemption, we consider whether the state law actions frustrate "the accomplishment and execution of the full purposes and objectives of Congress." *Hines*, 312 U.S. at 67, 61 S.Ct. 399. We vacate the district court's dismissal of the state law causes of action for conflict preemption, and remand for it to apply the analysis set forth below.

■ To determine whether these state law torts are in conflict with federal patent law and accordingly preempted, we assess a defendant's allegedly tortious conduct. If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law. Conversely, if the conduct is not so protected or governed, then the remedy is not preempted. This approach, which considers whether a state law tort, "as-applied," conflicts with federal patent law, is consistent with that

employed by the Supreme Court in cases involving preemption of state unfair competition law. *See, e.g.; Sears*, 376 U.S. at 231, 84 S.Ct. 784 (holding that state unfair competition law cannot be applied to "give protection of a kind that clashes with the objectives of the federal patent laws"); *Compco*, 376 U.S. at 238, 84 S.Ct. 779 (holding that state unfair competition law cannot be applied to impose liability on those who deceive the public by palming off a copy as an original). 

The Supreme Court has employed a similar approach, which focuses on the conduct alleged to be in conflict with federal law, for determining the preemptive scope of federal law. For example, in *Linn v. United Plant Guard Workers of America*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), the Supreme Court considered the extent to which the National Labor Relations Act (NLRA) barred a state civil action for libel stemming from a labor dispute. *See id.* at 55, 86 S.Ct. 657. Instead of preempting the particular state libel law on its face, the Court "limit[ed] the availability of state remedies for libel to those instances in which the complainant can show that the defamatory statements were circulated with malice and caused him damage," for these requirements "guard[ ] against abuse of libel actions and unwarranted intrusion upon free discussion envisioned by the [NLRA]." *Id.* at 65, 86 S.Ct. 657. In *California Coastal Commission v. Granite Rock Co.*, 480 U.S. 572, 107 S.Ct. 1419, 94 L.Ed.2d 577 (1987), the Court refused to preempt state permitting regulations in their entirety because of an alleged conflict with federal mineral law, for there was "a possible set of permit conditions not in conflict with federal law." *Id.* at 593, 107 S.Ct. 1419. As the Supreme Court noted, a state law is not per se preempted unless every fact situation that would satisfy the state law is in conflict with federal law. *See id.* at 580, 107 S.Ct. 1419. By limiting the extent of preemption to those instances when the application of state law would conflict with federal law, this approach best respects the states' sovereign nature. 

■ Two types of conduct that federal patent law immunizes from state tort liability

are relevant to this appeal. First, federal patent law bars the imposition of liability for conduct before the PTO unless the plaintiff can show that the patentholder's conduct amounted to fraud or rendered the patent application process a sham. In *Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 46 U.S.P.Q.2d 1097, 1106 (1998), decided shortly after *Dow Chemical,* we held, following Supreme Court precedent, that federal patent law shields a patentholder from federal antitrust liability for conduct in obtaining a patent unless the antitrust plaintiff proves "that the asserted patent was obtained through knowing and willful fraud." *Id.* at 1068, 141 F.3d 1059, 46 U.S.P.Q.2d at 1104. In *Abbott Laboratories v. Brennan,* 952 F.2d 1346, 21 U.S.P.Q.2d 1192 (Fed.Cir. 1991), we barred a state tort action based on a patentholder's conduct before the PTO "at least unless it is shown that the entire federal agency action was a 'sham.'" *Id.* at 1356, 952 F.2d 1346, 21 U.S.P.Q.2d at 1200 (quoting *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 144, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961)). *Nobelpharma* and *Abbott Laboratories* strike a balance between a patentholder's rights under federal patent law and obligations under other federal law with a conduct-based test. In so doing, the law supplies a clear line that divides a patentholder's protected conduct from that which could expose it to liability.

█ Second, federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith. *See, e.g., Virginia Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 869, 45 U.S.P.Q.2d 1225, 1232 (Fed.Cir.1997) ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction."), *petition for cert. filed,* 66 USLW 3773 (U.S. May 21, 1998) (No. 97–1879); *Mallinckrodt, Inc. v. Medipart, Inc.,* 976 F.2d 700, 709, 24 U.S.P.Q.2d 1173, 1180

(Fed.Cir.1992) (stating that a patentholder "that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers"); *Concrete Unlimited Inc. v. Cementcraft, Inc.,* 776 F.2d 1537, 1539, 227 U.S.P.Q. 784, 785 (Fed. Cir.1985) (holding that a patentholder "did only what any patent owner has the right to do to enforce its patent, and that includes threatening alleged infringers with suit"). *See generally Virtue v. Creamery Package Mfg. Co.,* 227 U.S. 8, 37–38, 33 S.Ct. 202, 57 L.Ed. 393 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts. Such action considered by itself cannot be said to be illegal."); *Kaplan v. Helenhart Novelty Corp.,* 182 F.2d 311, 314, 85 U.S.P.Q. 285, 287 (2d Cir.1950) ("[I]t is not an actionable wrong for one in good faith to make plain to whomsoever he will that it is his purpose to insist upon what he believes to be his legal rights, even though he may misconceive what those rights are."). Indeed, Title 35 authorizes patentholders to "give notice to the public that the [patented article] is patented" and makes marking or specific notice of the patent to the accused infringer a prerequisite to the recovery of damages. 35 U.S.C. § 287 (1994 & Supp. I 1995).

█ These two precepts of federal patent law mandate that such conduct may not be the subject of state tort liability. Accordingly, in a case involving a patentholder's conduct in obtaining or publicizing its patent, if the plaintiff were to fail to allege that the defendant patentholder was guilty of fraudulent conduct before the PTO or bad faith in the publication of a patent, then the complaint would be dismissed for failure to state a claim upon which relief can be granted because of federal preemption. If the complaint were sufficient but the proof were not to show such conduct, then the claim would fail on the merits. Of course, neither fraud nor bad faith need be a required element of a state law tort for that cause of action to stave off preemption by federal patent law, because a plaintiff could prove fraud or bad

faith for a tort that not only would be met by such a showing of proof, but also would be satisfied by less. Although to state and maintain a claim under a state law tort, a plaintiff may not be required to allege or prove that the patentholder perpetrated fraud before the PTO or acted in bad faith in the marketplace, to escape preemption, the plaintiff would need to allege and prove ultimately such conduct. To require less would impermissibly alter the balance between the competing purposes of federal patent law that Congress has prescribed.

Our holding in *Dow Chemical* is in harmony with this conduct-based approach. In that case, because the plaintiff alleged the bad faith enforcement of a patent, *see* 139 F.3d at 1476, 46 U.S.P.Q.2d at 1126, the state law torts were not preempted. As explained above, the defendant's conduct for which the plaintiff sought relief under state law was neither protected nor governed by federal patent law. Hence, the state law torts, as-applied, were not preempted. Here, in the complaint, Hunter Douglas made several general allegations concerning the Defendants' conduct both before the PTO and in the marketplace in relation to the Harmonic patents. However, it is not clear on its face that the complaint alleges that the Defendants' conduct amounted to either fraud or bad faith. Consequently, we remand for the district court to decide whether, in accordance with the guidelines set forth above, Hunter Douglas's allegations in the complaint are sufficient to survive a motion to dismiss the state law counts on the basis of preemption by federal patent law and, if so, whether there is evidence to support those allegations.

V

There is one final matter to address. The Defendants cross-appeal the denials of their motions for attorney fees under 35 U.S.C. § 285. We affirm, for the district court applied the proper legal standard, and it did not clearly err in finding the case not to be exceptional. *See, e.g., PPG Indus. v. Cela-nese Polymer Specialties Co.*, 840 F.2d 1565, 1567, 6 U.S.P.Q.2d 1010, 1012–13 (Fed.Cir. 1988).

VI

The confluence of our jurisdictional and preemption rulings raises federalism concerns. By holding that there is section 1338(a) jurisdiction over state law torts that plead a substantial question of federal patent law as a necessary element, we not only allow plaintiffs to bring such actions in federal court, but we also divest state courts of jurisdiction over them, for such cases belong exclusively in federal court. *See* 28 U.S.C. § 1338(a). This outcome is not merely hypothetical; state courts have dismissed state law actions because of exclusive federal jurisdiction. *See, e.g., Roach v. Crouch*, 524 N.W.2d 400, 403, 33 U.S.P.Q.2d 1361, 1363 (Iowa 1994). Nor is this outcome necessarily limited to state tort claims; this analysis conceivably applies to all state remedies so predicated on federal patent law. This result emerges from the Supreme Court's decision in *Christianson*, holding that section 1338(a), which provides for exclusive jurisdiction, should be interpreted in the same fashion as section 1331, which provides for concurrent jurisdiction. The impact, in federalism terms, is that state judiciaries will lose the opportunity to interpret state law in those limited circumstances when a state law cause of action pleads a substantial question of federal patent law as a necessary element. Even so, the preeminence of the states' laws will receive its full and appropriate due, for to resolve the state law elements of such actions, federal courts will be obligated to apply state law in accordance with *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

To avoid this result, it has been suggested that we should preempt all state law torts premised on federal patent law. *See Dow Chem. Co. v. Exxon Corp.*, 144 F.3d 1478, 1481, 46 U.S.P.Q.2d 1859, 1861 (Fed.Cir.1998) (Lourie, J., joined by Newman and Rader, JJ.) (dissenting from an order declining a

**1338**

suggestion for rehearing in banc). We believe, however, that such an outcome would cause more harm to federal-state relations than the result here. Requiring state law torts that plead as a necessary element a substantial question of federal patent law to proceed in federal court is a less severe intrusion on states' authority than barring them altogether.

Our holdings here chart the most deferential course in regard to the states' authority while still fulfilling our congressionally mandated responsibilities to exercise sections 1338(a) and 1295(a)(1) jurisdiction and to enforce federal preemption. The jurisdictional and preemption analyses, although both intimately linked to congressional intent, pose different questions drawn from different statutory provisions. Even if there is no preemption of a particular state law tort as-applied, that does not mean that Congress does not want there to be exclusive federal jurisdiction over that claim. Indeed, it is not only entirely reasonable, but eminently sensible for Congress to have stayed its power under the Supremacy Clause, in deference to the sovereignty of the states, but to have intended that state law actions predicated on federal patent law be heard exclusively in federal court to ensure the integrity of that law. *See* Martin H. Redish, *Reassessing the Allocation of Judicial Business Between State and Federal Courts*, 78 Va. L.Rev. 1769, 1792 (1992) (noting that, even were there to be no preemption, "Congress may still retain a strong interest in assuring that if a [state law] remedy is to be provided, it be provided when, and only when, the [federal] statute actually has been violated."). Accordingly, state torts that plead a substantial question of federal patent law as a necessary element and that are not in preemptory conflict with that law belong in federal court. Finally, we note and emphasize that when a state tort is preempted for conflict with federal patent law, the tort falls only in the suit in which the federal patent law is implicated. In other settings apart from federal patent law, the state tort remains viable and actionable.

COSTS

No costs.

*AFFIRMED–IN–PART, VACATED–IN–PART, and REMANDED.*