HUNTER DOUGLAS, INC., et al., Plaintiffs,

v.

HARMONIC DESIGN, INC., et al., Defendants.

No. CV 96–8513 WJR (RCx).

United States District Court, C.D. California.

April 15, 1997.

---

Loeb & Loeb, Richard J. Codding, Los Angeles, CA, Pennie & Edmonds, James W. Dabney, James G. Markey, Brian M. Rothery, Caroline R. Clark, New York City, for Plaintiffs.

Knobbe, Martens, Olson & Bear, L.L.P., James F. Lesniak, Joseph R. Re, Glenn R. Smith, Newport Beach, CA, for Defendant Harmonic Design, Inc.

Sheppard, Mullin, Richter & Hampton, L.L.P., Stephen C. Taylor, Kent Raygor, Holly O. Whatley, Los Angeles, CA, Lerner David, Littenberg, Krumholz & Mentlik, Roy H. Wepner, Marcus J. Millet, Jonathan A. David, Westfield, NJ, for Defendants Springs Industries, Inc., and Springs Window Fashions Divisions, Inc.

## ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

REA, District Judge.

The motion to dismiss of defendants Harmonic Design, Inc. ("Harmonic"), Springs Industries, Inc. ("Springs"), and Springs Window Fashions Division, Inc. ("SWFD") was filed on February 3, 1997, and oral argument was held on April 7, 1997. Having considered the above motion, the papers filed in support thereof and in opposition thereto, and the files in the case, the Court hereby finds and rules as follows:

Defendants' motion is GRANTED WITH PREJUDICE for the reasons set forth herein.

### I. *Procedural History and Background*

Plaintiffs Hunter Douglas, Inc. ("Hunter Douglas") and Hunter Douglas Fabrication Company ("HD Fabrication") commenced active marketing of their DUETTE Powerrise model electronic window shade in December, 1996. Shortly thereafter, plaintiffs filed a complaint against defendants Harmonic Design, Springs and SWFD. In their complaint against defendants, plaintiffs assert that they were damaged by Harmonic Designs' negligent and fraudulent procurement of allegedly invalid patents for an electronic window shade design since it restrained the plaintiffs from entering the market for the shades for four months until plaintiffs had time to research defendant Harmonic Designs' patents and determine that the patents were indeed invalid. Furthermore, plaintiffs contend that the delay that they were forced to endure while they determined the validity of defendant Harmonic Designs' patents caused them to lose sales of their new Powerrise Shade over that time period.

Plaintiffs also assert that defendants Springs and SWFD further damaged plaintiffs by advising potential customers of plaintiffs' shade that Springs and SWFD held exclusive title to the design of the window shade. This, plaintiffs also contend, had the effect of keeping the plaintiffs out of the market for electronic window shades. Thus the gravamen of plaintiffs' complaint is that the defendants, in improperly obtaining a patent for their window design and holding it out as an exclusive license, wrongfully kept plaintiffs out of the market for the shades and thus injured them.

The complaint raises seven causes of action. First, the complaint seeks declaratory relief in regard to the purported invalidity of the patents. *See,* 28 U.S.C. §§ 2201–02. In order for the plaintiffs to be entitled to this type of relief, they need to show that they

had a reasonable apprehension of being sued for patent infringement by the patent holder. *Id.* However, in ruling on the plaintiffs' first motion for dismissal, heard on January 27, 1997, this Court held that the claim for declaratory relief could not be sustained since the plaintiffs could not allege any facts that as a matter of law suggested that plaintiffs had reasonable apprehension of being sued for patent infringement.

Additionally, this Court held that it had jurisdiction to hear the second through seventh claims, for two counts of unfair competition, injurious falsehood, negligence, and two counts of interference with prospective economic advantage respectively. The Court agreed with plaintiffs that federal jurisdiction for these state claims was proper since the plaintiffs' right of relief necessarily depended on the resolution of a substantial question of federal patent law. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 809, 108 S.Ct. 2166, 2174, 100 L.Ed.2d 811 (1988) (*quoting, Franchise Tax Board of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2855–56, 77 L.Ed.2d 420 (1983)). Moreover, the Court also agreed with the plaintiffs that in order for the plaintiffs to be entitled to relief, they would necessarily need to show that the patents in question were indeed invalid as part of their state tort claims.

Defendants now bring this second motion for dismissal on the theory that counts two through seven, all state law claims, are preempted by federal patent law. In the alternative, defendants move for dismissal of the state claims on the ground that these causes of action do not state a claim upon which relief can be granted. This Court now finds that in such limited circumstances as are present in this case, the federal patent law does preempt the state law claims. Accordingly, this Court now dismisses the state law claims with prejudice and effectively terminates this lawsuit.

## II. The State Claims Are Preempted By Federal Law

### A. The Standard For Finding Preemption

The Supreme Court has laid out three different instances in which preemption of a state law by a federal law is appropriate. These situations are as follows:

(1) *Explicit pre-emption,* whereby Congress explicitly provided for pre-emption of state law in the federal statute; (2) *Field preemption,* wherein "the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it"; and (3) *Conflict pre-emption,* "where 'compliance with both federal and state regulation is a physical impossibility,'... or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'"....

*Cover v. Hydramatic Packing Co., Inc.,* 83 F.3d 1390 (Fed.Cir.1996) (emphasis in original and citations omitted).

### B. Explicit Preemption

None of the parties involved in this suit contend that the federal patent laws explicitly preempt the state law business torts that the plaintiffs allege. The Court agrees and finds that Congress has nowhere explicitly preempted the state claims raised here.

### C. Field Preemption

■ Defendants' Springs and SWFD argue that the state law claims are field preempted by the federal patent laws. Defendants Springs and SWFD assert that "states may not offer claims and remedies for attacking patents issued pursuant to Congress' mechanisms through procedures which are unavailable as a matter of federal law." SurRebuttal of defendants Springs and SWFD at 5:20–23.

Defendants explain that since the Supreme Court has held that states may not offer patent-like protection to inventions that otherwise remain unpatented, the "flip-side" must intuitively be true, and state law tort claims may not be able to invalidate a patent where the federal laws have not given the possible infringer the ability to do so. *Id.*

This argument is particularly persuasive when it is considered in light of the fact that

the Supreme Court has stated that the federal patent law is a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 167, 109 S.Ct. 971, 986, 103 L.Ed.2d 118 (1989) (*citing, Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

Plaintiffs are left to argue only that the federal patent law does not "completely preempt" state unfair competition claims. However, insofar as the state claims work to invalidate the patents, and thus encroach on patent law, the federal laws would in fact field preempt the state claims. Congress has well established avenues for invalidating patent claims, none of which are present in the instant case. The cases that plaintiffs' cite to dispute defendants' preemption arguments are factually distinguishable.

In particular, plaintiffs rely heavily on *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 986 F.2d 476 (Fed.Cir. 1993) and *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158 (Fed.Cir.1985) as examples of instances where the courts have found that state claims that invalidate patents are not preempted by federal law. However, in *Additive Controls*, the court did not address any preemption arguments and thus plaintiffs' reliance on the case is tenuous at best. In *Litton*, defendants' unfair competition claim was brought as a counterclaim to an infringement suit. Hence, the unfair competition claim would not have had the effect of invalidating the patent through an avenue not designated by Congress. Indeed, Congress has explicitly stated that a party that is being sued for patent infringement may defend itself by asserting a defense on the allegation that the patent is invalid. *See,* 35 U.S.C. § 282.

■ Accordingly, in circumstances such as those in the instant case, where federal remedies are not available to a party against a patent holder, a state vehicle that allows a plaintiff the opportunity nonetheless to effectively invalidate the patent would be field preempted by the federal patent law. As such, the state claims in this case are dismissed since they are field preempted by the federal patent law.

### D. Conflict Preemption

■ Additionally, defendants also argue that the state laws in this instance would work to invalidate certain U.S. patents that the Patent and Trademark Office has issued, and thus would deny defendants benefits that the federal patent system has already conferred on it. They cite the Supreme Court as instructive on this point:

> [The patent laws], like other laws of the United States enacted pursuant to constitutional authority, are the supreme law of the land. When state law touches upon the area of these federal statutes, it is "familiar doctrine" that the federal policy "may not be set at naught, or its benefits denied" by the state law. This is true, of course, even if the state law is enacted in the exercise of otherwise undoubted state power.

*Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 229, 84 S.Ct. 784, 787, 11 L.Ed.2d 661 (1964) (citations omitted).

There are many instances where the Supreme Court has preempted state laws because they acted to "set at naught" or to deny benefits that the patent laws granted. The Court stated in *Bonito Boats v. Thunder Craft Boats*, that "states may not offer patent like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law." 489 U.S. 141, 156, 109 S.Ct. 971, 980, 103 L.Ed.2d 118 (1989). Moreover, in *Bonito Boats*, the Supreme Court dealt with a Florida statute that extended to the plaintiff in that case "rights against the world, similar in scope and in operation to the rights accorded a federal patentee." *Bonito Boats*, 489 U.S. at 158, 109 S.Ct. at 981. The Court went on to explain that in that case, the item or idea that was protected by the state statute was unpatentable under federal law. *Id.* The Court further stated that the Florida statute conflicted with the federal patent policy "that all ideas in general circulation be dedicated to the common good unless they are protect-

ed by a valid patent." *Bonito Boats,* 489 U.S. at 159–60, 109 S.Ct. at 982.

Thus in *Bonito Boats,* the Court preempted state laws that frustrated federal patent policy. In the instant case, defendants argue that here too the state law would frustrate federal patent law by effectively stripping defendants of the benefits that the Patent and Trademark Office conferred or them.

Congress has created exhaustive mechanisms that allow for the invalidation of patents. Congress has enacted 35 U.S.C. § 282, which provides that in any action for patent infringement, invalidity of the patent is a complete defense. Declaratory relief is also available to any threatened plaintiff who seeks redress when there is a case or controversy. *See,* 28 U.S.C. §§ 2201–02. However, in order for this case or controversy to exist, the plaintiff must have a reasonable apprehension that the patent holder will bring a suit for patent infringement. *Id.* In addition to these avenues, parties may also invalidate patents in the absence of a case or controversy through the "reexamination" of issued patents by the Patent and Trademark Office. See, 35 U.S.C. §§ 302–07.

Plaintiffs argue unpersuasively that conflict preemption does not exist since defendants have not identified any federal policy or objective that would be denied by the maintenance of the state claims. However, there is indeed a conflict. This conflict is evident in that Congress has extended to a potential infringer the opportunity to bring a suit for declaratory judgment against a patent holder in order to invalidate a patent, but has extended this benefit only where the plaintiff/potential infringer has reasonable apprehension that the patent holder will bring a suit for patent infringement. This Court has already held, with regard to an earlier motion to dismiss, that declaratory relief is not proper in this case since defendants did not act in such a manner as to create reasonable apprehension on plaintiffs' part. *See* Order of February 7, 1997 ¶ 7.

To avoid preemption, plaintiffs at oral argument attempted to distance their state claims from the patent laws. However, as the Court had ruled earlier in finding that there was federal jurisdiction, plaintiffs would necessarily have to prove the invalidity of the patents to be awarded relief in this case. Hence, plaintiffs' claims are such that patent invalidity becomes an element of each state claim.

Specifically, plaintiffs' two claims for unfair competition under California law center around the fact that defendant Harmonic Design wrongfully procured the patents at issue, and that this is what caused the plaintiffs' damage as it created a four-month delay in the introduction of their own product to the market. Additionally, plaintiffs' injurious falsehood claim alleges that the defendants made false claims of ownership to the design of the window shades. Thus, relief for this claim necessarily rests on the invalidity of the patents. Similarly, plaintiffs' claim for negligence asserted that the defendants should have known that their patents were invalid. Finally, plaintiffs' interference with prospective economic advantage claims center around the fact that the patents are invalid as the allegedly unlawful interference involved assertions that Harmonic Design has a valid patent and that Springs and SWFD have exclusive right to the patent.

Since the state claims in the instant case would effectively invalidate the patents, and since plaintiffs themselves had no reasonable apprehension of being sued for patent infringement, conflict preemption bars plaintiffs' state claims in this instance. As such, the Court finds that the state law claims are preempted by the federal patent law.

III. *Conclusion*

The Court finds that under these circumstances the state law claims brought by the plaintiffs are both field and conflict preempted by the federal patent law. As such, any further review as to whether these causes of action state claims for which relief can be granted would be inappropriate and unnecessary. Accordingly the Court now dismisses the remaining causes of action of the complaint with prejudice.

IT IS SO ORDERED.